UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-81019-DIMITROULEAS

MARKETRAN, LLC,

      Plaintiff,

vs.

BROOKLYN WATER
ENTERPRISES, INC., et al.,

      Defendants.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Steven Fassberg's Motion to Dismiss

Third Amended Complaint ("TAC") [DE 85], Defendants Robert Green and John Preston's

Motion to Dismiss Plaintiff's TAC [DE 88], and Defendants North American (Florida)

Acquisition Corporation ("NAAC") and NADG (US) Inc.'s ("NADG's") Motion to Dismiss

Plaintiff's TAC [DE 89] (collectively, "Motions").  The Court has considered the Motions,

Plaintiff's Responses [DE 99, 100, & 101], Defendants' Replies [DE 106, 112, & 113], and the

record in this case, and is otherwise advised in the premises.

## I.    BACKGROUND

This copyright infringement action was filed by Plaintiff, Marketran, LLC ("Marketran"),

on June 19, 2016.  DE 1.  Marketran is a full service advertising, graphics, and design company

run by its President, David Wenger.  DE 78 ¶¶ 4, 31.  The operative complaint is the TAC, which

asserts claims against twenty-four Defendants, including movants Steven Fassberg, Robert

Green, John Preston, NAAC, and NADG.  DE 78.[1]

---

[1] Citations to the TAC in the Background Section are indicated hereafter as "¶ _".

As alleged in the TAC, Defendant Fassberg founded "The Original Brooklyn Water Bagel" in or around 2007.  ¶ 40.  In 2009, Fassberg sold some franchising rights in the company to Michael D'Angelo, who subsequently opened several of the franchised bagel shops.  ¶¶ 41–42.  In 2012, D'Angelo and Preston met with Wenger to discuss the possible retention of Marketran to handle the marketing for his franchises.  ¶ 48.  The discussion led to an unwritten agreement that Marketran would be paid a $2,500 monthly retainer plus printing costs.  ¶¶ 49–51, 57.  After that, Marketran began designing marketing materials, such as logos and menus, to promote the Brooklyn Water Bagel franchises.  ¶¶ 52–53.  Marketran consistently retained possession and control of its Design Files, and all printed materials with Marketran's work were ordered, printed, and delivered by Marketran.  ¶¶ 55–56.

Effective January 1, 2014, Fassberg's stores were merged with the D'Angelo stores; in the new company, D'Angelo would conduct all day-to-day operations.  ¶¶ 59–60.  In July 2014, Wenger and Michael Welch, who had taken over D'Angelo's role managing the stores, re-negotiated the relationship between the Brooklyn Water Bagel stores and Marketran.  ¶¶ 79–84.  The retainer was increased to $5,500 per month, and though Wenger sent a proposed contract offering to relinquish copyright ownership of Marketran's designs for $200 per file, that contract was not accepted.  ¶¶ 79–84.  In August 2015, the retainer was again increased and other details of the compensation structure were re-negotiated.  ¶¶ 97–100.

In early 2015, Fassberg opened two new Brooklyn Water Bagel stores.  ¶ 111.  Though Marketran's existing agreement did not cover any services to Fassberg, Marketran agreed to assist Fassberg in opening the new stores and to bill Fassberg directly.  ¶¶ 113–15.  In November 2015, relations soured between Wenger and Fassberg when Fassberg refused to pay an outstanding $1,100 invoice and demanded that Marketran turn over some files containing work Marketran had created for him.  ¶¶ 116–17.  The dispute reached a fever pitch when Fassberg

2

made a threatening phone call to Wenger.  ¶ 118.  On Welch's advice, Wenger discontinued the outstanding invoice and delivered Fassberg's requested files.  ¶¶ 120–26.

Though relations continued to deteriorate between Fassberg and Wenger, Marketran's relationship with the other Brooklyn Water Bagel entities remained positive until May 2016, when Fassberg became involved with the day-to-day operations of the other Brooklyn Water Bagel stores.  ¶ 132.  By that time, the Brooklyn Water Bagel stores had accumulated unpaid Marketran invoices of almost $200,000.  ¶ 143.  On June 3, 2016, Welch informed Wenger that Marketran's services had been terminated by the Board of Directors.  ¶ 164.  On June 7, 2016, Marketran's counsel sent a demand letter to the Brooklyn Water Bagel corporate entities ("Brooklyn") to cease and desist all use of Marketran's creative work.  ¶ 167.  Shortly thereafter, Wenger submitted twenty-eight separate copyright applications to the United States Copyright Office, many of which have been approved.  ¶¶ 169–78.  Beginning June 21, 2016, Defendants no longer had any license to continue to use Marketran's copyrighted works but continued to do so regardless.  ¶¶ 179–90.

## II.    **LEGAL STANDARD**

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 583, 588 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984)).

III.    **DISCUSSION**

A.  **Count VII – Contributory Copyright Infringement**

The TAC fails to state a claim for contributory copyright infringement against Defendants NAAC and NADG.  The Eleventh Circuit's well-settled test for a contributory infringer is one who (1) with knowledge of the infringing activity (2) induces, causes, or materially contributes to the infringing conduct of another.  *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (citations omitted).  "Knowledge" in the context of contributory copyright infringement means actual knowledge or reason to know of the infringing activity.  *Id.*

The TAC's factual allegations can support a reasonable inference that NAAC and NADG had reason to know that Brooklyn was infringing Marketran's copyrights.  For example, Marketran alleges that Defendant Preston is an officer of NADG and NAAC, as well as a Director of Brooklyn Water Bagel, Inc.  DE 78 ¶¶ 27, 339.  Marketran further alleges that Preston was present at the initial meeting with Wenger in 2012 and had "specific knowledge that Wenger, at that meeting was hired simply to provide advertising and public relations services, not design work, and so that Wenger never agreed to license or transfer Marketran's copyrights." *Id.* ¶ 344.  Marketran also claims that the Brooklyn Board of Directors voted to terminate its services on or about June 3, 2016, but Brooklyn continued to use Marketran's copyrighted

4

materials thereafter.  *Id.* ¶¶ 164, 180.  Based on these allegations, one could reasonably conclude that NADG and NAAC, through Preston, knew or should have known of the infringement.

However, the TAC does not allege how NAAC and NADG induced, caused, or materially contributed to the unauthorized use of Marketran's copyrighted materials.  The TAC contains no allegation that NADG or NAAC supervised, controlled, directed, or directly profited from any infringing activities.  Although the TAC does allege that NAAC and NADG contributed to Brooklyn by paying Welch to work there, providing operating capital, holding themselves out as Brooklyn's agents, and purchasing franchise stores, these are contributions to the general operation of the company, not its infringing activities.  They are simply too attenuated from the alleged infringing conduct to support a reasonable inference that NAAC and NADG induced, caused, or materially contributed to it.  Because this is the first time that a Defendant has challenged Count VII, the Court will dismiss the claim without prejudice and afford Marketran the opportunity to amend.

### B.  <u>Count VIII – Vicarious Copyright Infringement</u>

The TAC sufficiently states a claim for vicarious copyright infringement against Preston and Green.  Vicarious infringement occurs when the defendant (1) "has a right and ability to supervise the direct infringer" and (2) "profits directly from the infringement."  *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1295 (M.D. Fla. 2010), aff'd, 425 F. App'x 833 (11th Cir. 2011) (quoting *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  "Knowledge of the infringement is not necessary to a finding of vicarious infringement."  *Id.* (citing *So. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985)).

Preston and Green's Motion to Dismiss is markedly similar to Welch's Motion to Dismiss the corresponding claim in the Second Amended Complaint ("SAC").  *See* DE 38.  For

the same reasons that the Court denied Welch's Motion as to the vicarious infringement claim, it will deny Preston and Green's challenge to the TAC.  *See* DE 70 at 5–6.  Specifically, the TAC sufficiently alleges Preston's and Green's right and ability to supervise by expressly stating that they "have had and continue to have the ability and right to stop BROOKLYN from infringing on Marketran's copyrights," but continued to allow Brooklyn to use Marketran's copyrighted material.  DE 78 ¶¶ 362–63.  Marketran also claims that Preston and Green were put on notice of the infringement via the cease and desist letters, yet failed to stop the unauthorized use of Marketran's copyrighted works.  *Id.* ¶¶ 365–66.  The TAC provides sufficient factual allegations that Preston and Green profited directly from the infringement, claiming that Preston and Green "derive a financial benefit from allowing the infringing behavior to continue, including but not limited to, use of Marketran's copyrighted work without making payment, and use of Marketran's copyrighted works to increase sales of [Brooklyn Water Bagel] franchises."  *Id.* ¶ 364.  Taking these allegations in the light most favorable to Marketran, the Court finds that the TAC sufficiently alleges vicarious copyright infringement against Preston and Green.

Additionally, the Court has previously considered and rejected Preston and Green's argument that the Brooklyn Defendants are not liable for direct copyright infringement because they had an irrevocable license to use the materials commissioned from Marketran, and thus there can be no vicarious copyright infringement.  *See* DE 71 at 4.  As the Court already has held, the issue of license, scope thereof, and revocability are affirmative defenses for which Defendants bear the burden of proof and not valid bases for dismissal under Rule 12(b)(6) in this case.  *Id.*  Accordingly, Preston and Green's Motion to Dismiss will be denied.

## C.  **Count IX – FDUTPA Claim**

Marketran's allegations in the TAC, like the SAC, fail to state a FDUTPA claim against Fassberg.  The Court previously held that the SAC failed to allege actual damages or provide

sufficient facts to form a basis for injunctive or declaratory relief.  *See* DE 53 at 7–8; DE 71 at 5.

The same problems persist in the current iteration of the complaint.

"A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act

or unfair practice; (2) causation; and (3) actual damages."  *Rollins, Inc. v. Butland*, 951 So. 2d

860, 869 (Fla. 2d Dist. Ct. App. 2006) (citing *Chicken Unlimited, Inc. v. Bockover*, 374 So. 2d

96, 97 (Fla. 2d Dist. Ct. App. 1979)).  Under FDUTPA, "causation must be direct, rather than

remote or speculative," and "'actual damages' . . . must directly flow from the alleged deceptive

act or unfair practice."  *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

"FDUTPA does not provide for the recovery of nominal damages, speculative losses, or

compensation for subjective feelings of disappointment."  *City First Mortg. Corp. v. Barton*, 988

So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (citation omitted).

The TAC alleges that Fassberg violated FDUTPA when he: (1) caused Brooklyn to

engage in delay tactics to encourage Marketran to continue performing services with no intent to

pay for them; (2) physically threatened Wenger in order to obtain files; and (3) withheld monies

due to Marketran with the express intent of placing it in financial distress such that it would have

no choice but to hand over its copyrighted and other proprietary files, such as coding files.  DE

78 ¶¶ 378, 382–83, 385–86, 393.  Based on these allegations, Marketran seeks as actual damages

the diminution in value of 10,000 design files, totaling $1.5 million.  *See id.* ¶ 394; DE 99 at 4–6.

Marketran has failed to plead causation and actual damages for its FDUTPA claim

against Fassberg.  Even drawing all reasonable inferences in favor of Marketran, one cannot

conclude from the facts alleged that Fassberg's withholding of payments and verbal threats

proximately caused a diminution in value of Marketran's design files.  This loss flowed, if at all,

from Brooklyn's breach of contract and related conduct.  Marketran also seeks compensation for

damage to its reputation and the costs of taking out an emergency loan while payments were

withheld.  DE 99 at 5.  However, these are consequential damages, which are not recoverable under FDUTPA.  *See Barton*, 988 So. 2d at 86.

Finally, the TAC does not properly seek declaratory or injunctive relief.  The purpose of a declaratory judgment "is to clarify the legal relations at issue and to settle controversies prior to a legal breach of duty or contract."  *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009).  The relevant portion of the TAC simply seeks a declaration that Fassberg's actions violated the FDUTPA.  Such a declaration has no apparent legal significance beyond Marketran's immediate attempt to collect damages.  Regarding an injunction, the TAC alleges that Brooklyn, not Fassberg individually, continues to engage in the alleged deceptive and unfair conduct by withholding payments.  Because Marketran has not alleged continuing harm or risk of harm by Fassberg, the FDUTPA claim as pled cannot support a claim for injunctive relief against him.

Where a plaintiff fails to correct a deficient claim after prior opportunities to replead, the Court need not allow additional amendment.  *See, e.g., U.S. ex rel. Beekman v. IndyMac Fed. Bank*, No. 12-81138-CIV, 2015 WL 4111765, at *1 (S.D. Fla. July 7, 2015); *Silber v. Walgreens*, No. 12-20048-CIV, 2012 WL 201759, at *1 (S.D. Fla. Jan. 23, 2012).  Because the Court already has afforded Marketran the opportunity to amend this claim, Count IX shall be dismissed with prejudice as to Fassberg.

## IV.   <u>CONCLUSION</u>

In sum, the TAC sufficiently states a claim for vicarious copyright infringement against Preston and Green.  It does not, however, contain sufficient factual allegations to support a claim for contributory copyright infringement against NAAC and NADG or a FDUTPA claim against Fassberg.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Steven Fassberg's Motion to Dismiss [DE 85] is **GRANTED**.  Count IX is hereby **DISMISSED with prejudice** as to Defendant Steven Fassberg only.

2. Defendants Robert Green and John Preston's Motion to Dismiss [DE 88] is **DENIED**.

3. Defendant North American (Florida) Acquisition Corporation and NADG (US) Inc.'s Motion to Dismiss [DE 89] is **GRANTED**.  Count VII is **DISMISSED without prejudice** to allow for amendment consistent with this Order.

4. Plaintiff's Motion to Strike Defendants John Preston and Robert Green's Reply in Support of Their Motion to Dismiss [DE 114] is **DENIED as moot**.

5. Plaintiff's Motion to Strike Defendants NADG and NAAC's Reply in Support of Their Motion to Dismiss [DE 115] is **DENIED**, as the Court finds that the untimeliness of the filing was the result of excusable neglect.

6. Plaintiff shall file a Fourth Amended Complaint on or before **February 13, 2017**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 31st day of January, 2017.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record