UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-81019-DIMITROULEAS

MARKETRAN, LLC,

    Plaintiff,

vs.

BROOKLYN WATER
ENTERPRISES, INC., et al.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

**THIS CAUSE** is before the Court upon Plaintiff/Counter-Defendants' Motion to Dismiss Defendants'/Counter-Plaintiffs' Counterclaims [DE 102]. The Court has considered the Motion, Defendants/Counter-claimants Response [DE 111], Plaintiff/Counter-Defendants' Reply [DE 116], and is otherwise advised in the premises.

**I.    BACKGROUND**

This copyright infringement action was filed by Plaintiff, Marketran, LLC ("Marketran"), on June 19, 2016. [DE 1]. Marketran is a full service advertising, graphics, and design company run by its President, David Wenger. [DE 78 ¶¶ 4, 31]. The operative complaint is the Third Amended Complaint ("TAC"), which asserts claims against twenty-four Defendants, including Counter-claimants Brooklyn Water Enterprises, LLC and Brooklyn Water Enterprises, Inc. (collectively, "Brooklyn"). [DE 78].[1]

As alleged in the TAC, Defendant Fassberg founded "The Original Brooklyn Water Bagel" in or around 2007. ¶ 40. In 2009, Fassberg sold some franchising rights in the company

---

[1] Citations to the TAC in the Background Section are indicated hereafter as "¶ _".

to Michael D'Angelo, who subsequently opened several of the franchised bagel shops. ¶¶ 41–42. In 2012, D'Angelo and Preston met with Wenger to discuss the possible retention of Marketran to handle the marketing for his franchises. ¶ 48. The discussion led to an unwritten agreement that Marketran would be paid a $2,500 monthly retainer plus printing costs. ¶¶ 49–51, 57. After that, Marketran began designing marketing materials, such as logos and menus, to promote the Brooklyn Water Bagel franchises. ¶¶ 52–53. Marketran consistently retained possession and control of its Design Files, and all printed materials with Marketran's work were ordered, printed, and delivered by Marketran. ¶¶ 55–56.

Effective January 1, 2014, Fassberg's stores were merged with the D'Angelo stores; in the new company, D'Angelo would conduct all day-to-day operations. ¶¶ 59–60. In July 2014, Wenger and Michael Welch, who had taken over D'Angelo's role managing the stores, re-negotiated the relationship between the Brooklyn Water Bagel stores and Marketran. ¶¶ 79–84. The retainer was increased to $5,500 per month, and though Wenger sent a proposed contract offering to relinquish copyright ownership of Marketran's designs for $200 per file, that contract was not accepted. ¶¶ 79–84. In August 2015, the retainer was again increased and other details of the compensation structure were re-negotiated. ¶¶ 97–100.

In early 2015, Fassberg opened two new Brooklyn Water Bagel stores. ¶ 111. Though Marketran's existing agreement did not cover any services to Fassberg, Marketran agreed to assist Fassberg in opening the new stores and to bill Fassberg directly. ¶¶ 113–15. In November 2015, relations soured between Wenger and Fassberg when Fassberg refused to pay an outstanding $1,100 invoice and demanded that Marketran turn over some files containing work Marketran had created for him. ¶¶ 116–17. The dispute reached a fever pitch when Fassberg made a threatening phone call to Wenger. ¶ 118. On Welch's advice, Wenger discontinued the outstanding invoice and delivered Fassberg's requested files. ¶¶ 120–26.

2

Though relations continued to deteriorate between Fassberg and Wenger, Marketran's relationship with the other Brooklyn Water Bagel entities remained positive until May 2016, when Fassberg became involved with the day-to-day operations of the other Brooklyn Water Bagel stores. ¶ 132. By that time, the Brooklyn Water Bagel stores had accumulated unpaid Marketran invoices of almost $200,000. ¶ 143. On June 3, 2016, Welch informed Wenger that Marketran's services had been terminated by the Board of Directors. ¶ 164. On June 7, 2016, Marketran's counsel sent a demand letter to the Brooklyn Water Bagel corporate entities ("Brooklyn") to cease and desist all use of Marketran's creative work. ¶ 167. Shortly thereafter, Wenger submitted twenty-eight separate copyright applications to the United States Copyright Office, many of which have been approved. ¶¶ 169–78. Beginning June 21, 2016, Defendants no longer had any license to continue to use Marketran's copyrighted works but continued to do so regardless. ¶¶ 179–90.

On November 18, 2016, Brooklyn filed its answer, affirmative defenses, and counter-claims to the TAC. [DE 87]. Brooklyn asserts four counter-claims against Marketran and David Wenger: Count I for violation of the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 512(f); Count II for fraud in the inducement and/or fraudulent misrepresentation; Count III for breach of oral contract (alternative to Count II); and Count IV for breach of oral contract (alternative count). In the instant Motion, Marketran and Wenger seek dismissal of all four counts. For the reasons articulated below, the Court dismisses Counts III and IV with leave to amend.

## II.     LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S.

3

41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 583, 588 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984)).

### III.   DISCUSSION

#### A.   Count I – Violation of the Digital Millennium Copyright Act

The TAC adequately states a claim for violation under the DMCA. An improper takedown claim under the DMCA requires allegations of fact supporting that a "person knowingly materially misrepresent[ed] . . . that material or activity [was] infringing." 17 U.S.C. 512(f). Brooklyn has presented facts sufficient for the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 663 (citing *Twombly*, 550 U.S. at 556). In particular, Brooklyn alleges that Marketran and Wanger "expressly represented to [Brooklyn] that all works created by Marketran for [Brooklyn] would be owned by [Brooklyn] and treated as 'works for hire.'"[2] [DE 87 at ¶ 17]. Count I, taken as true for

---

[2] The Court need not enter the "work for hire" analysis because it is not necessary to determine if Brooklyn has adequately alleged that the subject works were "works for hire." It is enough that,

4

purposes of a motion to dismiss, sufficiently alleges that Wenger and Marketran had knowledge that the content was not infringing. Therefore, Count I is not subject to dismissal on the grounds stated in the instant Motion.

### B. Count II – Fraud in the Inducement and/or Negligent Misrepresentation

The TAC sufficiently states a claim for fraud in the inducement and/or negligent misrepresentation.-The elements of a claim based on fraud in the inducement are: "(1) A misrepresentation of a material fact; (2) The representor of the misrepresentation, knew or should have known of the statement's falsity; (3) Intent by the representor that the representation will induce another to rely and act on it; and (4) Resulting injury to the party acting in justifiable reliance on the representation." *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 742 (11th Cir. 1995)(citing *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So.2d 306, 308 (Fla. 4th Dist.Ct.App.1990) (per curiam), review denied, 581 So.2d 165 (Fla.1991)).

To prove negligent misrepresentation, it must be shown that: "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013)(citing *McGee v. JP Morgan Chase Bank, NA*, 520 Fed.Appx. 829, 831 (11th Cir.2013)).

Claims for fraud are subject to the heightened pleading requirements of Rule 9(b) in that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b).

---

when taking well-plead facts as true, Brooklyn has sufficiently plead that Wenger and Marketran had knowledge that the content was non-infringing.

5

Wenger and Marketran argue that this claim should be dismissed for seven unpersuasive reasons. They argue that the Count II should be dismissed because: 1) it fails to meet the heightened pleading standards of Rule 9(b); (2) the proposed contract predates the alleged false statements so there is no fraud; (3) Brooklyn's failure to set out the full terms of the purported underlying contract is somehow fatal to the claim; (4) the alleged promise is for an unenforceable promise to do something in the future; (5) the claim is barred by the economic loss rule; (6) Brooklyn could not reasonably rely on an oral promise to deem works for hire as a matter of law; and (7) Brooklyn was not involved with the purported agreement which was later taken over by Brooklyn, so they could not have heard or relied on Marketran's statements.

First, Count II satisfies the heightened pleading requirements of Rule 9(b) by stating the "who, what, where, when and how" regarding the circumstances constituting fraud. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Regarding Wenger and Marketran's second, third, and fourth arguments, whether a contract was formed, and if so, the terms of that contract and its date of formation, require determination of disputed facts; that determination is inappropriate at this stage. Fifth, the Supreme Court of Florida abrogated the application of the economic loss rule to cases where the parties are in contractual privity and limited the application of the economic loss rule solely to cases involving products liability. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 406-07 (Fla. 2013). Since Brooklyn's counterclaims do not involve products liability, the economic loss rule is inapplicable. Sixth, the Court need not determine the applicability of the "works for hire" doctrine; it is sufficient that Brooklyn alleges that the promise that works would be treated as "works for hire," for purposes of Brooklyn's use and rights to the works, served as a fraudulent inducement. [DE 87 ¶ 17]. Finally, there are too many factual disputes regarding timing of Marketran's statements and the time at which Brooklyn entered into an agreement with

Marketran; these factual disputes cannot be resolved at this stage. Accordingly, Count II is not subject to dismissal on these grounds.

### C. Counts III and IV Breach of Oral Contract

Counts III and IV are subject to dismissal because they fail to address each element of breach of contract. In response, Brooklyn acknowledges a "scrivener's error" of failing to incorporate by reference all preceding paragraphs. [DE 111 at 8]. Brooklyn is granted leave to amend Counts III and IV, but Brooklyn must do much more than simply incorporate preceding paragraphs in order to state a claim for breach of oral contract. Brooklyn must allege facts directed to each element of the claim; the Court will not accept a shotgun pleading that simply directs the Court to parse through the previously-alleged factual allegations.

## IV. CONCLUSION

In sum, Brooklyn's Counterclaims sufficiently state a claim for violation of the DMCA, negligent misrepresentation and/or fraudulent inducement. The Counterclaims, however, do not contain sufficient factual allegations to support a claim for breach of oral contract. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss [DE 87] is **GRANTED IN PART AND DENIED IN PART**. Counts III and IV are hereby **DISMISSED without prejudice** to allow for amendment consistent with this Order.

2. Brooklyn shall amend its Counterclaims on or before **February 21, 2017**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of February, 2017.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record